ARKANSAS STATE MEDICAL BOARD
v. John Q. ELLIOTT, M.D.

77-258                                                    563 S.W. 2d 427

Opinion delivered March 13, 1978
(Division II)
[Rehearing denied April 17, 1978.]

*Cearley, Gitchell, Bogard & Mitchell* and *Eugene R. Warren,* for appellant.

*Partlow & Mayes, P.A.,* for appellee.

CONLEY BYRD, Justice. The Arkansas State Medical Board suspended the license of Dr. John Q. Elliott on the basis that the Doctor had written prescriptions of Quaalude 300 excessively and had written an excessive number of prescriptions of Quaalude 300 for some persons. On appeal the circuit court reversed the decision of the Board because the administrative finding of the Board was in violation of Dr. Elliott's constitutional rights, in excess of the Board's statutory authority and was not supported by substantial evidence of record.

The record shows that Dr. Elliott was notified by the Board pursuant to the Administrative Procedure Act, Ark. Stat. Ann. § 5-708 (Repl. 1976), to appear and show cause why his medical license should not be revoked. The notice specifically charged that Dr. Elliott had written prescriptions for Schedule II drugs excessively and had written an excessive number of prescriptions for Schedule II drugs for some persons.

Dr. Elliott personally appeared at the hearing and participated therein without making objection to the charges or requesting that they be made more definite and certain.

The authority of the Board to revoke or suspend a license is given by Ark. Stat. Ann. § 72-613 (Supp. 1977), which authorizes the Board to act when a license holder has been guilty of "unprofessional conduct." The term "unprofessional conduct" is defined as "grossly negligent or ignorant malpractice." "Malpractice" is defined by a regulation of the Board to include any professional conduct, unreasonable lack of skill or fidelity in professional duties, evil practice, or illegal or immoral conduct in the practice of medicine or surgery. The regulation says that "Malpractice" should include but not be limited to "(4) the prescribing of excessive amounts of controlled substances to a patient including the writing of an excessive number of prescriptions for an addicting or potential harmful drug to the patient."

The criteria for Schedule II drugs, Ark. Stat. Ann. § 82-2606 (Repl. 1976), is as follows:

"The Coordinator shall place a substance in Schedule II if he finds that:
  (1) the substance has high potential for abuse;
  (2) the substance has current accepted medical use in treatment in the United States, or currently accepted medical use with severe restrictions; and
  (3) the abuse of the substance may lead to severe psychic or physical dependence."

At the hearing which was held on December 9, 1976, it was shown that Dr. Elliott had been before the Board on November 7, 1974, at which time he had agreed not to write prescriptions for amphetamines. Lieutenant Robert Womack of the Osceola Police Department had filed a complaint against Dr. Elliott with the Arkansas Department of Health.

Samuel R. Probasco, with the Drug Abuse Division of the Arkansas State Department of Health, had investigated Dr. Elliott. His investigation revealed that Dr. Elliott was the only doctor in Blytheville who was writing more prescriptions for Quaalude 300 than could be counted on one hand. He found that the drug stores in West Memphis had turned down Dr. Elliott's prescriptions "always for one reason youngsters, no physical need." All of the pharmacists in both Osceola and Blytheville had asked for help because of pure proliferation of the Quaalude 300 drugs. Between 7-21-76 and 11-13-76, one drug store in Blytheville filled 92 prescriptions written by Dr. Elliott, all for Quaalude 300 (30 units) except three. Mr. Probasco mentioned the case of a black male who was arrested in Osceola who had in his possession two prescriptions for Quaalude 300 — one under the name of Michael Johnson and the other one under the name Will Jones — both prescriptions having the same address. Mr. Probasco described the Quaalude 300 pills as having a street value from $3.00 to $4.00 per pill.

In response to a statement from witness Probasco that Dr. Elliott had become a patsy to the people who traffic in drugs Dr. Elliott stated, "Not anymore. Since two weeks ago, three days ago."

Dr. Elliott testified that some of his prescriptions were for kids he had known. That the people who have used Quaalude 300 told him that mixed with alcohol the drug heightens their sexual performance. He also admitted that he had given the two prescriptions to the black man. When he questioned the man the second time, the man told him he was the brother of the one that had been there before. However, in response to questions from members of the Board, Dr. Elliott stated that when the black male came in "he wanted something for sleep, didn't want anything wrong, he said."

We find ample evidence, evidence in fact corroborated by Dr. Elliott, to substantiate the Board's findings. Dr. Elliott had been prescribing Quaalude 300 for both young and old people and to persons who did not have anything wrong with them. By the Doctor's own admissions, the Board had ample evidence from which to conclude that he had been a patsy for persons who traffic in illegal drugs. Furthermore, the proof shows that all of his prescriptions were for 30 units of Quaalude 300 and that he had given two prescriptions to one black male under two different names. It follows that the circuit court was in error when it held to the contrary.

Appellee contends that the circuit court should be affirmed because there is no law prescribing the number of drugs that can be prescribed for any particular patient and no law prescribing what constitutes the excessive writing of prescriptions for any one patient. We find no merit to this contention. Subsection (e) of Ark. Stat. Ann. § 72-613 (Supp. 1977), defines unprofessional conduct to mean "violation of the laws of the United States or the State of Arkansas regulating the possession, distribution or use of narcotic or controlled drugs classed in Schedules 1 through 5 of the Arkansas Controlled Substances Act . . . ." Also subsection (g) of the statute, *supra,* defines "unprofessional conduct" to include "grossly negligent or ignorant malpractice." The giving of two prescriptions to the same man under two different names who admittedly had nothing wrong with him would certainly fall within the category of "negligent or ignorant malpractice." Furthermore, can one admittedly be a patsy to persons dealing in the drug traffic and not be guilty of "unprofessional conduct" within the meaning of Ark. Stat. Ann. § 72-613 *supra?* We think not.

Appellee contends that the notice given him denied him his constitutional rights because it did not tell him that he had the right to have counsel and the right to present and cross-examine witnesses. We find no merit to this contention. In the first place the notice complied with the Administrative Procedure Act, Ark. Stat. Ann. § 5-708 (Repl. 1976), which superseded Ark. Stat. Ann. § 72-614 (Repl. 1957). In the next place appellee has cited no authority that places upon an administrative board the same concern for an individual that is required in a criminal prosecution. We note that the Administrative Procedure Act gives to the respondent in an administrative proceeding the right to appear by counsel and to present and cross-examine witnesses, but we know of no authority that places upon the administrative board the duty to warn respondents of such rights. In fact the authorities appear to be contrary to appellee's position, see Annotation 1 L. Ed. 2d 1865.

Appellee also suggests that the hearing officer or one of the participants in the hearing was biased because he made a pronouncement prior to the conclusion of the hearing that appellee's license should be suspended. Since this pronouncement of the Board member was made after Dr. Elliott had admitted to being a patsy to people dealing in the drug traffic; had admitted to prescribing the drug to young people to heighten their sexual performance; and had admitted to giving two prescriptions to the same man under two different names, we cannot say that the Board member's comment disqualified him under Ark. Stat. Ann. § 5-709 (Repl. 1976).

For the reasons herein stated the order of the circuit court is reversed with directions to reinstate the order of the Board.

Reversed and remanded.

We agree: HARRIS, C.J., and FOGLEMAN and HOLT, JJ.